¶ 1.
ANN WALSH BRADLEY, J.
Petitioner, Kei-monte Antonie Wilson, Sr. ("Wilson"), seeks review of a court of appeals decision affirming a circuit court judgment of conviction and order denying his postcon-viction motion.[1] The court of appeals determined that the circuit court correctly interpreted the statutory procedure for subpoenaing witnesses in a criminal case. Additionally, it concluded that Wilson did not receive ineffective assistance of counsel because he was not prejudiced by the failure to obtain a witness's testimony at a suppression hearing.
*96 ¶ 2. Wilson requests that this court reverse the court of appeals' decision and remand for an eviden-tiary hearing to take testimony on a material issue of fact from a key witness who failed to appear at the suppression hearing. He contends that the court of appeals erred in concluding that the witness was improperly served a subpoena. In the alternative, Wilson asserts that his trial counsel was ineffective for failing to argue that the service of the subpoena was proper, or alternatively, for failing to properly subpoena the witness.
¶ 3. Contrary to the court of appeals, we conclude that the circuit court erred in determining that Wilson improperly served a subpoena on the witness. Wilson complied with Wis. Stat. § 885.03(2013-14), which allows service of a subpoena on a witness in a criminal case by leaving the subpoena at a witness's abode.[2] Because we determine that the subpoena was properly served, we need not address the alternative argument asserting ineffective assistance of counsel.[3]
¶ 4. Accordingly, we reverse the court of appeals and remand to the circuit court for a continuance of the suppression hearing so that Wilson may present the testimony of the witness who failed to appear.
*97 I 5. The initial material facts of this case are not in dispute. Wilson was charged with one count of possession with intent to deliver between five and fifteen grams of cocaine as a second offense.
¶ 6. According to the complaint, police officers observed a truck parked in a vacant lot near a "No Trespassing" sign. They saw Wilson get out of the truck and walk towards a known drug house. When Wilson reappeared and walked back towards the truck, he was approached by three officers. He allegedly consented to a search of his person, which resulted in the officers finding cocaine and cash.
¶ 7. Wilson filed a suppression motion, contending that there was no basis for the stop and that he had not consented to the search. Accordingly, he argued that the evidence obtained from the search (three plastic bags allegedly containing cocaine and $449 in cash) must be suppressed. During the suppression hearing, a factual issue arose regarding whether the police officers had their guns drawn when they approached the truck and searched Wilson.
¶ 8. The police officers testified that that their guns were not drawn. For example, Officer Hunter testified:
Q: At any point in time prior to approaching the parked truck did you have your weapon drawn?
A: No.
Q: Did Officer Savagian have his weapon drawn did you see?
A: No.
*98 [[Image here]]
Q: At any point of time in this encounter with either Darryl, the front seat passenger, or Mr. Wilson did any of the officers have their guns out?
A: No.
¶ 9. The defense called a witness who disputed the officers' account of events. Darryl Roberts, who was sitting in the truck with Wilson, testified that two "[o]fficers arrive[d] with their guns out." Roberts further testified that one officer opened the door, grabbed his arm, pulled him out of the truck and immediately searched him.
¶ 10. A second defense witness, Jacqueline Brown, failed to appear to testify at the hearing. Wilson's trial counsel observed that the affidavit of service indicated that Brown had been served by leaving a copy of the subpoena with her daughter at their residence.[4] He proffered that if she were present, Brown would testify that she observed the officers with guns drawn approach the vehicle and take both Wilson and Roberts out of the vehicle.
¶ 11. As his counsel further explained, Brown received the subpoena and had notice of the hearing, but was unable to leave work to attend the hearing:
She indicated to me she was at work and she was unable to get someone to cover her shift. The witness who did show up [Ms. Brown's son Darryl Roberts] brought us a letter from [Ms. Brown] indicating that she wasn't going to be able to attend today. My *99 impression is, is that she's a necessary witness since there's some dispute here as to the conditions surrounding the stop. We do have a proper subpoena. I have an affidavit of service.
¶ 12. After Brown failed to appear at the hearing, defense counsel moved to adjourn the hearing in order to resubpoena Brown or proposed that Brown testify by phone. The State objected to having Brown testify by phone and instead suggested a body attachment. Defense counsel agreed with the State that a body attachment should be ordered.
¶ 13. The circuit court acknowledged that testimony regarding whether the officers had their guns drawn "does seem to be the issue in this case." It stated:
As a practical matter if they came to the vehicle with guns ablaze, then we have a different issue because then the people in the car could have felt they were under arrest or — and didn't have any choice other than to be searched. So it's a key issue. It would seem to me it's the only key issue of all the testimony I've heard here today....
Although Brown would have offered testimony on this key issue, the circuit court concluded that "the problem that I have here is that this is not a valid subpoena and I could not issue a body attachment based on this subpoena."
¶ 14. According to the circuit court, the service of the subpoena — an apparent single attempt that used substituted service — was inadequate. It reasoned that "you have to attempt on a couple of occasions and make reasonable efforts before you can serve by substitute service." The circuit court asked defense counsel and the State whether it was "wrong on the law" regarding *100 service and both agreed that multiple attempts at personal service need to be made before substituted service may be used. Consequently, the circuit denied both the body attachment and the adjournment request.
¶ 15. The hearing continued without testimony from Brown. Wilson testified in his own defense that three officers ran up with their guns drawn:
[The officer] had his gun and then he just start patting on me. And I'm looking dead at the gun. I'm like— 'cause I'm scared. I'm like, oh, man, what's going on. . . .
f 16. However, the circuit court concluded that the police officers' testimony was more credible than was the testimony of Roberts and Wilson. It addressed the absence of Brown's testimony, concluding that even if she had testified, this likely would not have assisted the court in its ruling on the motion because Roberts' and Wilson's testimony was inconsistent. The circuit court further determined there was reasonable suspicion to stop and consent to the search. It denied Wilson's motion to suppress.
f 17. Wilson subsequently pleaded guilty to one count of possession with intent to deliver between five and fifteen grams of cocaine. In exchange for Wilson's plea, the State dropped the repeater charge. The circuit court sentenced Wilson to five years of imprisonment.
¶ 18. Wilson filed a postconviction motion, arguing that the circuit court erroneously determined that service of the subpoena was inadequate. Additionally, he asserted that he received ineffective assistance of counsel because trial counsel failed to make an argument that the subpoena was properly served. In the *101 alternative, he advances that if it is determined that the witness was improperly served, then trial counsel was ineffective for failing to ensure that service of the subpoena was properly executed.
¶ 19. The circuit court denied Wilson's postcon-viction motion without a hearing. The court of appeals affirmed the circuit court's judgment and order, concluding that the circuit court "properly interpreted the subpoena rules and that no prejudice has been shown from the failure to obtain the witness's testimony." State v. Wilson, No. 2015AP671-CR, unpublished slip op., ¶ 1 (Wis. Ct. App. July 6, 2016).
II
¶ 20. We are asked to determine whether Wilson complied with the statutory procedure for serving a subpoena on a witness in a criminal case. Accordingly, we are called upon to interpret and apply relevant statutes. The interpretation of a statute presents a question of law that we decide independently of the decisions rendered by the circuit court and the court of appeals. State v. Harrison, 2015 WI 5, ¶ 37, 360 Wis. 2d 246, 858 N.W.2d 372.
¶ 21. Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory language its common, ordinary and accepted meaning, except that technical or specially-defined words are given their technical or special definitions. Id.
¶ 22. Statutory language is interpreted in the context in which it is used, in relation to the language *102 of surrounding or closely-related statutes. Id., ¶ 46. Generally, "where a specific statutory provision leads in one direction and a general statutory provision in another, the specific statutory provision controls." Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶ 23, 286 Wis. 2d 252, 706 N.W.2d 110 (citation omitted).
¶ 23. If the meaning of a statute is clear, we may end our analysis. However, legislative history and other authoritative sources may be consulted to confirm a plain meaning interpretation. Kalal, 271 Wis. 2d 633, ¶ 51.
III
¶ 24. At issue in this case is the procedure for service of a subpoena on a witness in a criminal case. The parties present for our examination four Wisconsin statutes addressing the requirements for service of subpoenas. We begin by setting forth the four statutes and then examine how the statutes interface one with the other.
f 25. Wilson focuses our attention and relies on two statutes, Wis. Stat. §§ 972.Hand 885.03. Chapter 972 Wis. Stats, is entitled Criminal Trials and within that chapter Wilson points to Wis. Stat. § 972.11(Evi-dence and practice; civil rules applicable). It states that Chapter 885 shall apply in all criminal proceedings:
(1) Except as provided in subs. (2) to (4), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different con *103 struction. . . . Chapters 885 to 895, except ss. 804.02 to 804.07 and 887.23 to 887.26, shall apply in all criminal proceedings.
Wis. Stat. § 972.11(1).
¶ 26. Accordingly, we turn next to the second statute Wilson advances. It is located in Chapter 885 ("Witnesses and Oral Testimony"), a Chapter apart from either the criminal or civil rules of procedure. Within the Chapter lies Wis. Stat. § 885.03(Service of Subpoena), which provides three methods for serving a subpoena, including by leaving a copy at the witness's abode:
Any subpoena may be served by any person by exhibiting and reading it to the witness, or by giving the witness a copy thereof, or by leaving such copy at the witness's abode.
¶ 27. The State on the other hand asks us to focus primarily on two statutes that are set forth in the civil rules of procedure, Wis. Stat. §§ 805.07 and 801.11. The former also incorporates Chapter 885.
f 28. Wisconsin Stat. § 805.07(Subpoena) states that a subpoena generally may be served in accordance with Chapter 885. However, by reference to Wis. Stat. § 801.11(l)(b), it excepts from that general premise the manner in which substituted personal service of a witness subpoena must be accomplished. Wis. Stat. § 805.07 provides:
(1) Issuance and service. Subpoenas shall be issued and served in accordance with ch. 885. A subpoena may also be issued by any attorney of record in a civil action or special proceeding to compel attendance of witnesses for deposition, hearing or trial in the action or special proceeding.
*104 [[Image here]]
(5) substituted service. A subpoena may be served in the manner provided in s. 885.03 except that substituted personal service may be made only as provided in s. 801.11(l)(b) and except that officers, directors, and managing agents of public or private corporations or limited liability companies subpoenaed in their official capacity may be served as provided in s. 801.11(5)(a).
¶ 29. Pursuant to the rules of civil procedure, Wis. Stat. § 801.11 ("Personal jurisdiction, manner of serving summons for") sets forth the manner for substituted personal service of a summons on a defendant. Section 801.11 states:
A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:
(1) Natural Person. Except as provided in sub.
(2) upon a natural person:
(a) By personally serving the summons upon the defendant either within or without this state.
(b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode:
1. In the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof;
lm. In the presence of a competent adult, currently residing in the abode of the defendant, who shall be informed of the contents of the summons; or
*105 2. Pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made.
[[Image here]]
When read together with Wis. Stat. § 805.07, these two rules of civil procedure instruct that substituted service may be used to serve a subpoena only if after reasonable diligence a witness cannot be personally served.
IV
¶ 30. As Kalal instructs, we begin our statutory interpretation with the language of the statute. 271 Wis. 2d 633, ¶ 45. We focus first on Wis. Stat. § 972.11(1), which is part of the criminal procedure statutes. It initially provides that "the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction." However, it subsequently references Chapter 885, which governs the service of subpoenas. Section 972.11(1) expressly provides that "Chapter[s] 885 to 895. . . shall apply in all criminal proceedings." Therein lies the rub. Which part of Wis. Stat. § 972.11 directs our inquiry? The answer will determine whether reasonable diligence was required here.
¶ 31. The State points initially to Wis. Stat. § 972.11, emphasizing the portion of its text that sets forth the general premise that the rules of practice in civil actions shall be applicable in criminal proceedings unless context clearly requires otherwise.
f 32. It asserts that the civil statutes Wis. Stat. §§ 805.07(5) and 801.11 control here and that their context does not require a different construction. The *106 State explains that although Wis. Stat. § 801.11(l)(b) is the statute governing the service of a summons in civil actions, its procedure for substituted service is incorporated by Wis. Stat. § 805.07(5) as the procedure for serving a subpoena in a civil action. See Wis. Stat. § 805.07(5) ("A subpoena may be served in the manner provided in s. 885.03except that substituted personal service may be made only as provided in s. 801.11(l)(b). . . .").
¶ 33. In a civil action, a subpoena may be left at a witness's residence only if, with "reasonable diligence" the defendant cannot be personally served. Wis. Stat. § 801.11(l)(b). In such a case, it may be left with a competent family member at least 14 years of age or in the presence of a competent adult currently residing in the abode of the defendant. Wis. Stat. § 801.11(l)(b)l.-lm. Accordingly, the State maintains that the subpoena was not properly served because Wilson did not satisfy the reasonable diligence requirements when he used substituted service after only one attempt at personal service.
¶ 34. Admittedly, Wis. Stat. § 972.11(1) points us in two different directions. On the one hand, the rules of civil procedure are applicable generally to criminal proceedings unless the context of a section or rule requires a different construction. The application of the rules of civil procedure mandates reasonable diligence for substituted service of a subpoena. On the other hand, Chapter 885 is to apply in all criminal proceedings and within that chapter lies Wis. Stat. § 885.03that sets forth three manners for service of a subpoena that do not include the reasonable diligence mandate.
¶ 35. We find guidance in this court's prior instruction that "where a specific statutory provision *107 leads in one direction and a general statutory provision in another, the specific statutory provision controls." Marder, 286 Wis. 2d 252, ¶ 23, 706 N.W.2d 110 (citation omitted); see also State v. Schaefer, 2008 WI 25, ¶ 47, 308 Wis. 2d 279, 746 N.W.2d 457.
f 36. Because Wis. Stat. § 972.11(1) explicitly references Chapter 885, it is the more specific textual provision. In contrast, the rules of civil procedure are only generally applied to criminal cases through Wis. Stat. § 972.11(1). Thus, service of a witness subpoena in a criminal proceeding is controlled by Wis. Stat. § 885.03, rather than by the rules of civil procedure.
¶ 37. The plain language of Wis. Stat. § 885.03sets forth the procedures for serving a subpoena on a witness in a criminal proceeding. It provides only that "[a]ny subpoena may be served by any person by exhibiting and reading it to the witness, or by giving the witness a copy thereof, or by leaving such copy at the witness's abode." Wis. Stat. § 885.03.
¶ 38. We turn next to the legislative history of the civil and criminal subpoena statutes to confirm our plain meaning interpretation of the statute. Kalal, 271 Wis. 2d 633, ¶ 51. More specifically, we observe that when the civil subpoena statutes were amended to incorporate a "reasonable diligence" requirement, the criminal subpoena statutes remained unchanged.
1 39. In the 1970s, as part of a revision to Wisconsin's civil procedure code, the legislature enacted Wis. Stat. § 805.07(5), which incorporates Wis. Stat. § 801.11(l)(b) and its "reasonable diligence" standard. See Wis. Stat. § 805.07(5) (1975-76) (effective Jan. 1, 1976); Rules of Civil Procedure Committee 1970-1978.
¶ 40. At the time that Wis. Stat. § 805.07(5) was enacted, the legislature did not alter Wis. Stat. *108 § 885.03. If the legislature intended Wis. Stat. § 805.07(5) to apply to criminal proceedings, it could have repealed Wis. Stat. § 885.03 and thus removed the option of service by leaving a copy of the subpoena at the witness's abode. It did not. Alternatively, at the time that Wis. Stat. § 805.07(5) was enacted, it could have amended Wis. Stat. § 885.03 to include a "reasonable diligence" requirement or to include a reference to Wis. Stat. §§ 805.07 or 801.11. It did neither. In 1993, the legislature last took the opportunity to amend Wis. Stat. § 885.03 and there yet remains no reference to either reasonable diligence or Wis. Stat. § 801.11(1).[5]
¶ 41. In contrast, in 2010 when it amended Chapter 968, which governs the commencement of criminal proceedings, the legislature specifically referenced Wis. Stat. § 801.11. In amending the chapter, it created Wis. Stat. § 968.375(5) (governing subpoenas and warrants for records or communications of customers of an electronic communication service or remote computing service provider). It provides that "[a] subpoena or warrant issued under this section may be served in the manner provided for serving a summons under s. 801.11(5).. ." Wis. Stat. § 968.375(5).
¶ 42. If Wis. Stat. § 801.11 already applied to criminal cases, it would be unnecessary to specifically reference this civil statute in Wis. Stat. § 968.375(5). We should not interpret a statute in a way that renders a portion of it superfluous. Hutson v. State of Wis. Pers. Comm'n, 2003 WI 97, ¶ 49, 263 Wis. 2d 612, 665 N.W.2d 212 (quoting Kollasch v. Adamany, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981)) ("When construing *109 statutes, meaning should be given to every word, clause and sentence in the statute, and a construction which would make part of the statute superfluous should be avoided wherever possible."). If we were to conclude that Wis. Stat. § 801.11 already applied to the service of a subpoena in all criminal cases, the language incorporating it into Wis. Stat. § 968.375 would be rendered superfluous.
¶ 43. This court's decision in State v. Popenhagen, 2008 WI 55, 309 Wis. 2d 601, 749 N.W.2d 611, also informs our analysis. In Popenhagen, the State obtained documents in a criminal case with subpoenas issued pursuant to Wis. Stat. § 805.07. Id., ¶¶ 7-8. The parties agreed that the State erred in issuing the subpoenas pursuant to Wis. Stat. § 805.07 because it should have followed the procedure set forth in the criminal statutes. Id., ¶ 10.
f 44. The Popenhagen court determined that the documents obtained with the subpoena must be suppressed because otherwise the safeguards established by the criminal statutes regarding the service of subpoenas would be rendered meaningless. Id., ¶ 71. The concurrence in Popenhagen pointedly explained, "[t]he criminal law has its own subpoena statutes .. . The Wisconsin criminal code specifically provides that Chapter 885, Witnesses and Oral Testimony, 'shall apply in all criminal proceedings.' " Id., ¶¶ 138-39 (Ziegler, J., concurring) (quoting Wis. Stat. § 972.11(1)). Likewise, the Popenhagen concurrence correctly observed that Wis. Stat. § 805.07 is "a civil subpoena statute meant for civil litigants." Id., ¶ 141.
¶ 45. Our interpretation that Wis. Stat. § 885.03 provides the procedure for serving a witness subpoena in a criminal case appears to be well established. Indeed, the Wisconsin Criminal Practice & Procedure *110 Handbook, in both its first and second editions, instructs that service of a subpoena may be accomplished "simply by. . . leaving a copy of it at the witness's residence." Christine M. Wiseman, Nicholas L. Chiarkas, & Daniel D. Blinka, 9 Wis. Practice: Criminal Practice and Procedure § 24.11 (1996); Christine M. Wiseman and Michael Tobin, 9 Wis. Practice: Criminal Practice & Procedure § 24.13 (2016).
¶ 46. Thus, although both the civil and criminal procedures statutes incorporate Wis. Stat. § 805.03, they do so differently. In the civil context, Wis. Stat. § 885.03is modified by Wis. Stat. §§ 805.07 and 801.11 by providing for substituted service premised on a reasonable diligence requirement. However, in the criminal context, the procedures set forth in Wis. Stat. § 885.03 are unaltered. It sets forth three manners of service of a witness subpoena (by exhibiting and reading it to the witness, giving the witness a copy, or by leaving it at the witness's abode) and no reasonable diligence is mandated. Accordingly, we determine that the procedures set forth in Wis. Stat. § 885.03 govern the service of a witness in a criminal proceeding.
¶ 47. This does not mean, however, that a party is precluded from employing substituted service with reasonable diligence. In many circumstances it may appear to be the prudent way to proceed. However, the statute as written does not mandate it.[6]
f 48. We turn now to examine whether the service of the subpoena in this case was done in accordance with Wis. Stat. § 885.03. It is undisputed that *111 Wilson served the witness with a subpoena by leaving it at the witness's abode with her daughter. When the witness failed to appear to testify at the hearing, defense counsel moved to adjourn the hearing in order to resubpoena the witness. The State suggested, and defense counsel agreed, that the court issue a body attachment.
¶ 49. After reviewing the subpoena, however, the circuit court concluded that its service was inadequate. It reasoned that "you have to attempt on a couple of occasions and make reasonable efforts before you can serve by substitute service." The circuit court proceeded to ask defense counsel and the State whether it was "wrong on the law" regarding service. Both agreed that the court was correct that multiple attempts at personal service must be made before leaving a subpoena at a witness's abode.
f 50. The circuit court concluded that "the problem that I have here is that this is not a valid subpoena and I could not issue a body attachment based on this subpoena." It denied both the body attachment and refused to adjourn the hearing so that the witness could be resubpoenaed. The circuit court erred, because as set forth above, Wilson complied with Wis. Stat. § 885.03, which allows service of a subpoena on a witness in a criminal case by leaving the subpoena at a witness's abode.
¶ 51. Finally, we pause briefly to discuss Wilson's ineffective assistance of counsel claims. Wilson asserts that his trial counsel was ineffective for failing to argue that the service of the subpoena was proper, or alternatively, for failing to properly subpoena the wit *112 ness.[7] He further contends that at the suppression hearing he was prejudiced by the absence of the testimony of a key witness.
¶ 52. In order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that his counsel's representation was deficient; and (2) that this deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). To *113 show prejudice, a defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
¶ 53. We need not determine whether Wilson received ineffective assistance of counsel because Wilson prevailed on his statutory interpretation argument. As Wilson's counsel explained at oral argument, his ineffective assistance of counsel claim was raised as an alternative argument if the court did not address the merits of Wilson's claim. Because we determine that Wilson properly subpoenaed the witness and remand for an evidentiary hearing, we do not address Wilson's ineffective assistance of counsel claim.
V
¶ 54. In sum, we conclude that the circuit court erred in determining that Wilson improperly served a subpoena on the witness. Wilson complied with Wis. Stat. § 885.03, which allows service of a subpoena on a witness in a criminal case by leaving the subpoena at a witness's abode. Because the subpoena was properly served, we reverse the court of appeals and remand to the circuit court for a continuance of the suppression hearing so that Wilson may take the witness's testimony.
By the Court. — The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

 State v. Wilson, No. 2015AP671-CR, unpublished slip op. (Wis. Ct. App. July 6, 2016) (affirming judgment and order entered by the circuit court for Milwaukee County, William S. Pocan, J., presiding).

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 We need not determine whether Wilson received ineffective assistance of counsel because Wilson prevailed on his statutory interpretation argument. As Wilson's counsel explained at oral argument, his ineffective assistance of counsel claim was raised as an alternative argument if the court did not address the merits of Wilson's statutory claim. Because we determine that Wilson properly subpoenaed the witness and thus remand for an evidentiary hearing, we do not address the merits of Wilson's ineffective assistance of counsel claim.

 In this case there is no dispute that the witness received notice of the hearing. At oral argument it was underscored that we need not address any concerns that may arise if a witness does not receive notice.

 The 1993 amendment changed the statute to make it gender neutral, but otherwise did not alter the statute.

 Additionally, we observe that a circuit court retains discretion to issue a body attachment. Pursuant to Wis. Stat. § 885.11(2), for an attachment to issue there must have been an "unexcused failure to appear."

 Wilson argues in his brief that if the court finds he forfeited the argument that Brown was properly subpoenaed, it should address his ineffective assistance of counsel claims.
Generally, issues not raised or considered by the circuit court will not be considered for the first time on appeal. State v. Holland Plastics Co., 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983). However, it is within this court's discretion to disregard alleged forfeiture and consider the merits of any issue because the rule of forfeiture is one of judicial administration and not of power. See, e.g., State v. Beamon, 2013 WI 47, ¶ 49, 347 Wis. 2d 559, 830 N.W.2d 681; State ex rel. Universal Processing Serv. of Wis., LLC v. Cir. Ct. of Milwaukee Cty., 2017 WI 26, ¶ 53, 374 Wis. 2d 26, 892 N.W.2d 267 ("Rules of forfeiture and waiver are rules of judicial administration, and thus, a reviewing court may disregard a waiver or forfeiture and address the merits of an unpreserved issue in an appropriate case."); D.L. Anderson's Lakeside Leisure Co., Inc. v. Anderson, 2008 WI 126, ¶ 41, 314 Wis. 2d 560, 757 N.W.2d 803 (we may address a forfeited issue at our discretion when we deem it important).
Although trial counsel did not object to the circuit court's ruling that Brown was not properly subpoenaed, we decline to apply the forfeiture rule here. The dissent contends that application of the forfeiture rule is appropriate to avoid a strategy in which trial counsel fails to object for strategic reasons. However, there is no evidence that counsel failed to object for strategic reasons in this case.
Additionally, the argument raised on appeal has been briefed and argued by both parties. Accordingly, we choose to address Wilson's argument set forth above in order to clarify the important issue of law that is presented in this case.