# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP648-CR |
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Respondent, v. Anton R. Dorsey, Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 308, 895 N.W.2d 103
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | January 25, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 23, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | Paul J. Lenz |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | R.G. BRADLEY, J. concurs, joined by KELLY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed and an oral argument by *Frederick A. Bechtold*, Taylors Falls, Minnesota.

For the plaintiff-respondent, there was a brief filed and an oral argument by *Tiffany M. Winter,* assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2018 WI 10**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP648-CR
(L.C. No. 2014CF204)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Anton R. Dorsey,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JAN 25, 2018**

Diane M. Fremgen
Acting Clerk of Supreme
Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Dorsey, No. 2015AP648-CR, unpublished slip op. (Wis. Ct. App. Dec. 6, 2016) (per curiam), affirming the Eau Claire County circuit court's[1] judgments of conviction for Anton R. Dorsey ("Dorsey") for three crimes related to his domestic violence toward C.B.

¶2 In a criminal action by the State, Dorsey was charged with four crimes relating to his domestic violence toward his then-girlfriend, C.B.: one count of strangulation and

---

[1] The Honorable Paul J. Lenz presided.

suffocation under Wis. Stat. § 940.235(1) (2013-14)[2];[3] one count of misdemeanor battery under Wis. Stat. § 940.19(1); one count of disorderly conduct under Wis. Stat. §§ 947.01 and 973.055(1); and one count of aggravated battery under §§ 940.19(6) and 973.055(1). All counts were charged with repeater enhancers.

¶3 In the circuit court, the State filed a motion to admit other-acts evidence. Ruling on this motion required the circuit court to interpret, as a matter of first impression, the recently amended language in Wis. Stat. § 904.04(2)(b)1. After colloquy with the parties, the circuit court held that the new language allowed the admission of other acts of a defendant in a domestic abuse case with greater latitude under the Sullivan[4] analysis. Given this interpretation, the circuit court admitted the testimony of R.K., a former girlfriend of Dorsey's, who testified to other acts of physical violence committed by Dorsey against her when they were dating in 2011. Postconviction, Dorsey appealed.

¶4 The court of appeals affirmed on other grounds. It held that the greater latitude rule did not apply because the text, not the title ("Greater latitude"), controls, and that the

---

[2] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

[3] The jury found Dorsey not guilty of count one and his appeal here involves only the judgments of conviction entered for counts two through four. Thus, we will limit our discussion and analysis to counts two through four.

[4] State v. Sullivan, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

text of subd. (2)(b)1. did not indicate any clear legislative intent to adopt the greater latitude rule with regard to other acts of domestic abuse. The court of appeals then evaluated admission of the other-acts evidence under a straight Sullivan analysis and concluded that it was admissible, even without applying greater latitude.

¶5 There are two issues on this appeal. First, we consider what standard for admission of other-acts evidence applies under the recently amended language in Wis. Stat. § 904.04(2)(b)1. Second, we consider whether the evidence of Dorsey's other acts was properly admitted under § 904.04(2)(b)1. As to the first issue, we conclude that the recently amended language allows admission of other-acts evidence with greater latitude under a Sullivan analysis. As to the second issue, we conclude that the circuit court did not erroneously exercise its discretion in admitting evidence of Dorsey's other acts because the circuit court applied the proper legal standard and admission was a conclusion that a reasonable judge could reach based on the facts of the record.

¶6 Thus, we affirm the decision of the court of appeals on other grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶7 The State charged Dorsey with the following four crimes: (1) strangulation and suffocation under Wis. Stat. § 940.235(1), for intentionally impeding normal breathing by applying pressure on the throat or neck of another person; (2)

misdemeanor battery under Wis. Stat. § 940.19(1), for intending to cause bodily harm to C.B., without her consent and with the knowledge that she did not consent; (3) disorderly conduct under Wis. Stat. §§ 947.01(1) and 973.055(1), for engaging in violent, abusive, or otherwise disorderly conduct, under circumstances in which such conduct tended to cause a disturbance; and (4) aggravated battery under §§ 940.19(6) and 973.055(1), for intentionally causing bodily harm to C.B. by conduct that created a substantial risk of great bodily harm.[5] Dorsey entered pleas of not guilty and the case was set for a jury trial.

¶8 Before trial, the State filed a motion to introduce evidence of Dorsey's two convictions for domestic battery from 2011 for other acts of domestic violence toward a former girlfriend, R.K., arguing that such evidence was admissible to prove intent to cause bodily harm under the recently amended[6] Wis. Stat. § 904.04(2)(b)1.,[7] which states as follows:

_____

[5] The criminal complaint was filed on March 18, 2014, and Dorsey waived his right to a preliminary hearing on April 15, 2014. On May 2, 2014, Dorsey pled not guilty and the case was set for trial.

[6] See 2013 Wis. Act 362, §§ 20-22, 38; see also id., § 38 (amending and renumbering Wis. Stat. § 944.33(3) as Wis. Stat. § 904.04(2)(b)1.).

[7] Prior to this motion, Dorsey had filed a motion in limine, requesting, in part, that the State be "prohibited from introducing any evidence concerning alleged acts of criminal or other misconduct by the defendant either prior to or following the date of the alleged offense charged in the Complaint." In support of this request, Dorsey argued that "[t]he probative value of such other misconduct evidence, if any, is out-weighed by its prejudicial effect . . . ." The State also filed a pre-
(continued)

4

> (b) Greater Latitude. 1. In a criminal proceeding alleging a violation of s. 940.302(2) or of ch. 948, alleging the commission of a serious sex offense, as defined in s. 939.615(1)(b), or of domestic abuse, as defined in s. 968.075(1)(a), or alleging an offense that, following a conviction, is subject to the surcharge in s. 973.055, evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

Wis. Stat. § 904.04(2)(b)1.[8] The State argued that this other-acts evidence was admissible under the now-familiar three-step analysis promulgated in State v. Sullivan, 216 Wis. 2d 768, 576 N.W.2d 30 (1998): other-acts evidence is admissible if (1) it is offered for a permissible purpose under § 904.04(2)(a),[9] (2) it

---

trial motion in limine, requesting, in part, that Dorsey be prohibited from introducing "any witness' criminal record, or other crimes, wrongs or acts, if any, unless a proper hearing is held under Wis. [Stat.] § 904.04."

[8] In Wisconsin, the admissibility of prior convictions for substance is governed by Wis. Stat. § 904.04 and the admissibility of prior convictions for impeachment is governed by Wis. Stat. § 906.09.

[9] Wisconsin Stat. § 904.04(2)(a) states as follows:

Except as provided in par. (b)2., evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

§ 904.04(2)(a). This list is nonexclusive. See State v. Shillcut, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983) ("[This list] of circumstances . . . for which the evidence is relevant and admissible is not exclusionary but, rather, illustrative.").

is relevant under § 904.01,[10] and (3) its probative value is not substantially[11] outweighed by the risk of unfair prejudice under § 904.03.[12] See Sullivan, 216 Wis. 2d at 772-73.

[10] Wisconsin Stat. § 904.01 states as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

§ 904.01.

[11] "The term 'substantially' indicates that if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted." State v. Payano, 2009 WI 86, ¶80, 320 Wis. 2d 348, 768 N.W.2d 832 (emphasis in original) (quoting State v. Speer, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993)).

[12] Wisconsin Stat. § 904.03 states as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

§ 904.03. As this language demonstrates, unfair prejudice is not the only reason that evidence which is relevant may nonetheless be excluded. See also Wis. Stat. §§ 904.06-904.16. Here, however, unfair prejudice was alleged and we limit our review to that issue. "Unfair prejudice" is prejudice that results

when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

Sullivan, 216 Wis. 2d at 789-90.

6

¶9 Under the first prong, the State argued that the evidence was offered "to establish the defendant's intent and motive to cause bodily harm to his victim and to control her within the context of a domestic relationship." Under the second prong, the State argued that the evidence was relevant because it established Dorsey's intent and motive, which were facts of consequence, and that the other acts were near enough in time, place, and circumstances to have a tendency to make the facts of intent and motive more probable. Under the third prong, the State noted that the defendant bore the burden to show that the probative value is substantially outweighed by unfair prejudice and argued that a cautionary jury instruction would ensure that the jury only considered the evidence for the proffered purpose, thereby avoiding any unfair prejudice.

¶10 On August 26, 2014, the circuit court held a hearing on the State's motion. During the hearing, the court heard arguments from the parties as to the proper interpretation of the new language in Wis. Stat. § 904.04(2)(b)1. The circuit court ultimately held that the amended language "provid[es] greater latitude . . . similar . . . to the serious sex offense business and making it available more to be able to be used in the case in chief than [the court] would provide."

¶11 The circuit court then allowed the evidence to be admitted, holding that "using that greater latitude[,] the three-prong analysis of Sullivan is met." Under the first

7

prong, the court held that intent and motive to control were permissible purposes.[13] Under the second prong, the court held that the other acts were relevant "because [] the similarity, the motive to control," which although "not very, very, very near in time, [was] within two years and in a period of time in which the clock kind of stops ticking a little bit because the defendant [was] on probation for a period of that time." Additionally, the court held that "the clear statutory language indicates that it does not need to involve the same victim." Under the third prong, the court held that the probative value was not substantially outweighed by the danger of unfair prejudice, and that a cautionary instruction would ensure that this information goes "only to evaluate the defendant's motive and intent."

¶12 On August 28, 2014, trial began. At trial, the State's primary witness was C.B., the victim. C.B. testified that she and Dorsey started dating in June of 2013. As to count one, for strangulation and suffocation, C.B. testified that, on the night of October 11-12, 2013, she and Dorsey got into an argument about money on their way home from a bar after a night

---

[13] In its analysis under Sullivan, the circuit court did not specifically hold that the purposes offered by the State were permissible under the first prong, but its discussion of the second and third prongs rests on a holding that intent and motive were permissible purposes. In this regard, we note that the circuit court had "read the motion so [it had] an understanding of what the State is looking to do," and acknowledged the State's arguments on motive and intent in discussing how to tailor the cautionary jury instruction.

out with friends. She felt that "all [she was] good for [was] money" and told him "[t]his is done. This isn't a healthy relationship. I'm not happy." He then pulled the car over, locked the doors, pushed her head against the window, and demanded to know "is there someone else? Do you have someone else? Is that why you don't want me here?" She testified that she was able to get out of the car and that she had started walking toward her house when he came up behind her, but she did not remember anything else until waking up on the ground with him saying, "[y]ou aren't F-ing doing this to me."

¶13 As to count two, for misdemeanor battery, C.B. testified that, in December of 2013, she could not remember exactly what had started the argument and caused Dorsey to be upset with her, but she remembered telling him that she "didn't want to talk to him . . . right now" and rolled over in the bed to face away from him. He responded by saying "[n]o, we're going to talk about this," and turned her back to face him by grabbing her hip; he then flicked her lip with his finger, splitting it open and causing it to bleed. C.B. testified that Dorsey then threw a tissue box at her for her bloody lip. He was saying, "I don't know why you lie to me, why you lie . . . to me all the time," to which C.B. responded that she did not know what he was upset about. He then grabbed her by the waist, bringing her toward him, pulled her hair to make her look up at him because "he likes to have eye contact," and spit in her face.

9

¶14 As to counts three and four, for disorderly conduct and aggravated battery, C.B. testified that on March 11, 2014, she and Dorsey were in the parking lot of a bar when Dorsey got upset after he saw that she had been texting a man he did not like. (Dorsey had grabbed C.B.'s phone from her during an argument about her talking to her ex.) She testified that Dorsey accused her of sleeping with this other man and that she just kept telling him "[n]o, it's not like that. He's just a friend." She got out of the car and tried to catch the attention of someone in an office next to the bar because she was afraid of getting hit. Dorsey got out saying, "[d]on't you dare, don't you dare," and came up behind her, grabbed her, and pushed her up against the side of the building demanding to know "[w]hy are you doing this?" A few people then came out into the parking lot and Dorsey told her to get back in the car.

¶15 Nothing more happened that night, but C.B. testified that when she woke up the next morning, Dorsey was leaning over her just inches from her face and said, "I can't believe you're doing this, that you keep doing this." She started getting ready for work, but before she could leave, Dorsey told her to sit down, that they "were going to talk about this." She testified that she sat down on the bed and that right away he hit her and said, "I don't believe that you're doing this." When she tried to move away, he grabbed her hair, pulled her back, and hit her in the head again. C.B. testified that her head was ringing and she felt sick to her stomach, that she told him she had to go to work, but that he kept hitting her. Dorsey

10

relented when C.B. told him that she had a meeting and that if she was not there "they're going to wonder what's going on, and they will send someone to the house." He then threw her phone at her chest; she took it, ran down the stairs, grabbed her keys, and got out the door and into her car.

¶16 The State also called R.K., a former girlfriend of Dorsey's. R.K.'s testimony regarding Dorsey's violent acts toward her is the focus of Dorsey's appeal. At trial, R.K. testified about two incidents that took place in 2011.[14] The first was in June of 2011, when R.K. was six months pregnant. R.K. testified that she had asked Dorsey to take a paternity test so that he could not later claim that their child was not his. He became upset, thinking that the real reason she wanted the test was that she was not sure who the father was. He left, but when he came back later that night he was yelling and swearing and calling her names; he flicked a lit cigarette butt at her and tried to leave in her car. When she got in the passenger side to stop him from taking the car, he pushed her out while backing out of the driveway. She then testified that, when Dorsey came back later, he yelled some more, dragged her out of the house by her feet, causing bruising to her abdomen, and locked her out of her house.

---

[14] Although Dorsey was convicted of domestic battery for both of these incidents, the circuit court did not allow the State to elicit the fact of Dorsey's convictions at trial because it "[didn't] see that it adds anything."

¶17 The second incident was in November of 2011. R.K. testified that Dorsey had become upset because he felt she did not respect him. He asked her to leave, and R.K. testified that she was going to go because he was sitting on the couch feeding their daughter and she "didn't want things to escalate." As she was walking out the door, he took the bottle out of their daughter's mouth and threw it at R.K., and then threw a shoe at R.K. He then asked R.K. to come back in the house, and when she came back in, he locked the door, began yelling at her, pushed her down to the ground, and started hitting her in the head with a shoe and kicking her in the back repeatedly. R.K. testified that when Dorsey stopped "after a while" and went into the kitchen, she took their daughter, ran out to the car, and drove to her mother's house.

¶18 Dorsey's defense was that these witnesses were making false allegations and that the acts never happened. As to C.B., he testified that he did not remember having a physical altercation where he grabbed her around the neck; that he had never tried to prevent C.B. from leaving the house; and that her injuries in March were because she had slipped in the shower. As to R.K., Dorsey initially testified that he never spat on her; that he never threw a shoe or baby bottle at her; and that he never dragged her out of the house when she was six months pregnant. Outside the presence of the jury, the State then sought to introduce his convictions for these incidents to impeach his testimony; the circuit court denied the request, accepting Dorsey's explanation that "he misunderstood exactly

12

how he was supposed to respond." When asked again (in the presence of the jury), Dorsey admitted that, in June of 2011, he spat on R.K. and dragged her out of the house when she was six months pregnant because he had been upset that the baby was possibly not his; and that, in November of 2011, he threw a shoe and a baby bottle at R.K., prevented her from leaving their apartment, and hit her because he felt that R.K. had not been respecting him.

¶19 At the close of evidence, the circuit court instructed the jury. As pertains to the issue here, the court gave a cautionary jury instruction regarding other acts:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial.
>
> Specifically, evidence has been presented that the defendant committed a battery of [R.K.] in June and November of 2011. If you find that this conduct did occur, you should consider it only on the issue of motive and intent.
>
> You may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.
>
> Evidence was received on the issues of motive, that is, whether the defendant had the reason to desire the result of the offense charged, and intent, that is, whether the defendant acted with the state of mind that is required for the offense charged.
>
> You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to

13

conclude that the defendant is a bad person and for that reason is guilty of the offense charged.[15]

¶20 On August 28, 2014, the jury found Dorsey not guilty on count one,[16] but found Dorsey guilty on counts two through four.[17] The circuit court sentenced Dorsey on October 24, 2014,[18] and entered the judgments of conviction on October 27, 2014.

¶21 On March 30, 2015, Dorsey filed notice of appeal. On December 6, 2016, the court of appeals affirmed the circuit court on other grounds. Contrary to the circuit court, the court of appeals held that the greater latitude rule did not

---

[15] The circuit court also instructed the jury regarding impeachment by prior conviction:

> Evidence has been received that the defendant in this trial has been convicted of crimes. This evidence was received solely because it bears upon the credibility of the witness. It must not be used for any other purpose, and in particular a criminal conviction at some previous time is not proof of guilt of the offense now charged.

This was in reference to Dorsey's testimony on cross-examination that he had been convicted of crimes on ten occasions.

[16] Count one was for Strangulation and Suffocation, Repeater, under Wis. Stat. §§ 940.235(1) and 939.62(1)(b).

[17] Count two was for Misdemeanor Battery, Repeater, under Wis. Stat. §§ 940.19(1) and 939.62(1)(a); count three was for Disorderly Conduct, Repeater, Domestic Abuse, under Wis. Stat. §§ 947.01(1), 939.62(1)(a), and 973.055(1); and count four was for Aggravated Battery, Repeater, Domestic Abuse, under §§ 940.19(6), 939.62(1)(b), and 973.055(1).

[18] Dorsey was sentenced as follows: on count two, to one year imprisonment; on count three, to one year imprisonment; and on count four, to two years, nine months imprisonment and two years, three months extended supervision. These sentences were to be served concurrently.

apply because the "text must control over [the] title" and "[t]he text of Wis. Stat. § 904.04(2)(b)1. does not indicate any clear legislative intent to make the greater latitude rule, as developed through our state's case law, now applicable to domestic abuse cases." Dorsey, unpublished slip op., ¶22. Instead, the court of appeals held that the other acts were admissible under a straight Sullivan analysis: first, the evidence was offered for the permissible purpose of proving intent and motive "to control [C.B.] within the context of a domestic relationship," id., ¶¶25-27, 29; second, the evidence was relevant because intent is an element of any crime and is thus "of consequence," even if undisputed, and the other acts were similar enough in time,[19] place, and circumstances that they had probative value, id., ¶¶34-37; third, Dorsey did not satisfy his burden to show that the probative value was substantially outweighed by the risk of unfair prejudice because Dorsey conceded there were similarities, the evidence was "highly probative of intent," and "any prejudicial effect could be mitigated by the use of [a] cautionary instruction," id., ¶43.

¶22 On January 3, 2017, Dorsey filed a petition for review in this court. On April 10, 2017, we granted the petition.

---

[19] As in the circuit court, the court of appeals found that the two-year gap in time did not sever the connection because Dorsey "may have purposefully waited until his probation expired to engage in further domestic abuse, so as to avoid probation revocation." State v. Dorsey, No. 2015AP648-CR, unpublished slip op., ¶40 (Wis. Ct. App. Dec. 6, 2016) (per curiam).

15

## II. STANDARD OF REVIEW

¶23 Determining what standard for admission of other-acts evidence applies under the recently amended language in Wis. Stat. § 904.04(2)(b)1. requires us to interpret the statute. "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346.

¶24 Determining whether the evidence of Dorsey's other acts was properly admitted under Wis. Stat. § 904.04(2)(b)1. requires us to review an exercise of discretion by the circuit court. See State v. Jackson, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791 ("This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion."). "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." Id.

## III. ANALYSIS

¶25 There are two issues on this appeal. First, we consider what standard for admission of other-acts evidence applies under the recently amended language in Wis. Stat. § 904.04(2)(b)1. Second, we consider whether the evidence of Dorsey's other acts was properly admitted under § 904.04(2)(b)1. As to the first issue, we conclude that the recently amended

16

language allows admission of other-acts evidence with greater latitude under a Sullivan analysis.  As to the second issue, we conclude that the circuit court did not erroneously exercise its discretion in admitting evidence of Dorsey's other acts because the circuit court applied the proper legal standard and admission was a conclusion that a reasonable judge could reach based on the facts of the record.

A.   What Standard For Admission Of Other-Acts Evidence
Applies Under Wis. Stat. § 904.04(2)(b)1.

¶26 We consider first what standard for admission of other-acts evidence applies under the recently amended language in Wis. Stat. § 904.04(2)(b)1.  Dorsey argues that a straight Sullivan analysis applies, that is, that the statute does not afford circuit courts greater latitude to admit other-acts evidence of domestic abuse.  The State argues that the amended language should be interpreted one of two ways: one, under the common law greater latitude rule, as affording circuit courts greater latitude to admit other, similar acts of domestic abuse in a Sullivan analysis; or two, under a plain language interpretation, as allowing circuit courts to admit other, similar acts of domestic abuse without requiring a permissible purpose (which is required under the first prong of Sullivan). We conclude that the recently amended language allows for the

17

admission of other, similar acts of domestic abuse with greater latitude under a <u>Sullivan</u> analysis.[20]

¶27   "[S]tatutory interpretation begins with the language of the statute." <u>State ex rel. Kalal v. Cir. Ct. for Dane Cty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.   Wisconsin Stat. § 904.04(2), entitled "Other crimes, wrongs, or acts," states, in relevant part, as follows:

> (a)  General admissibility. Except as provided in par. (b)2., evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.   This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> (b)  Greater   latitude. 1. In   a   criminal proceeding alleging a violation of s. 940.302(2) or of ch. 948, alleging the commission of a serious sex offense, as defined in s. 939.615(1)(b), or of domestic abuse, as defined in s. 968.075(1)(a),[21] or

---

[20] Although we discuss the statute in the context of domestic abuse, our interpretation here applies with equal force to the other circumstances listed in Wis. Stat. § 904.04(2)(b)1.

[21] Wisconsin Stat. § 968.075(1)(a) states as follows:

> "Domestic abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has a child in common:

> 1.  Intentional infliction of physical pain, physical injury or illness.

> 2.  Intentional impairment of physical condition.

> 3.  A violation of s. 940.225(1), (2) or (3).

(continued)

alleging an offense that, following a conviction, is subject to the surcharge in s. 973.055, evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

§ 904.04(2)(a), (b)1. (footnote added).

¶28 "If the meaning of the statute is plain, we ordinarily stop the inquiry." Kalal, 271 Wis. 2d 633, ¶45. As argued by the State, under a plain language interpretation of Wis. Stat. § 904.04(2)(b)1., the court could hold that evidence of other, similar[22] acts by the accused is admissible, even if the acts relate to a different victim, if the similar acts are offered in a criminal proceeding that alleges (1) a violation of Wis. Stat. § 940.302(2); (2) a violation of Wis. Stat. ch. 948; (3) the commission of a serious sex offense, as defined in Wis. Stat. § 939.615(1)(b); (4) the commission of domestic abuse, as defined in Wis. Stat. § 968.075(1)(a); or (5) an offense that,

---

4. A physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under subd. 1., 2. or 3.

Wis. Stat. § 968.075(1)(a). The parties do not dispute that Dorsey's acts qualify as domestic abuse under this definition.

[22] We note that subd. (2)(b)1. specifically requires that the other acts be "similar acts by the accused." Wis. Stat. § 904.04(2)(b)1. This specific requirement of similarity distinguishes subd. (2)(b)1. from para. (2)(a), but this requirement is nonetheless satisfied when applying greater latitude under a Sullivan analysis——the standard that we adopt below——because the second prong of Sullivan directs circuit courts to examine the similarity of the acts when evaluating probative value. We discuss this issue of similarity more below. See infra ¶¶45, 49.

following conviction, is subject to the surcharge in Wis. Stat. § 973.055. The plain meaning interpretation would thus allow circuit courts to admit evidence of other, similar acts without regard to its purpose, even if the purpose is to show "that the person acted in conformity therewith," (i.e., propensity). § 904.04(2)(a).[23]

---

[23] The concurrence argues that this isolated plain meaning of subd. (2)(b)1. should be the end of a circuit court's analysis, that is, that "evidence of 'similar acts' in sensitive crimes cases [is] admissible without requiring the State to establish a permissible purpose." Concurrence, ¶73. This conclusion is problematic for at least two reasons. First, it ignores the context of surrounding provisions within Wis. Stat. § 904.04. See State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. As concluded below, such an isolated interpretation creates a conflict in the plain language of the statute in the context of para. (2)(a). See infra ¶29. Such an isolated interpretation also creates a conflict in the plain language of the statute in the context of subsec. (1), which embodies the general purpose of rule 904.04 "to exclude use of other misdeeds to prove character in order to prove guilt." See State v. Spraggin, 77 Wis. 2d 89, 94, 252 N.W.2d 94 (1977). Subsection (1) states in relevant part as follows:

> Character evidence generally. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . .

§ 904.04(1).

Second, and relatedly, this isolated interpretation would effectively repeal the exclusionary purpose of the rule, which is supported by four long-standing and oft-cited rationales:

> (1) [t]he overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present

(continued)

20

No. 2015AP648-CR

¶29 Subdivision (2)(b)1. must, however, be interpreted "in the context in which it is used; not in isolation but as part of a whole." Kalal, 271 Wis. 2d 633, ¶46. And this plain language

---

charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.

Whitty v. State, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967). Thus, the concurrence would have us overturn decades of common law construction by this court and by lower courts. But see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 327 (2012) ("Repeals by implication are disfavored——'very much disfavored.'"); id. at 318 ("A statute will be construed to alter the common law only when that disposition is clear.").

Moreover, and perhaps more importantly, the concurrence does not provide any practical guidance to circuit courts because it does not offer a standard for admission of other, similar acts. Under its isolated interpretation, could a court admit acts as "similar" because they were committed in the same month? Is a court compelled to admit similar acts without any assessment of reliability? How would the court instruct the jury regarding such other-acts evidence, or is that rendered unnecessary because a jury can use the evidence for any purpose it sees fit? In other words, without a standard for admission, how could courts guarantee a fair trial? Such an aimless interpretation would result in appeal after appeal, and would require opinion after opinion explaining what we did not mean to say. Thus, although the concurrence is unpersuaded by our position, see Concurrence, ¶72, its skepticism reveals a troubling lack of recognition of the practical effect that such a simplistic interpretation will have in courtrooms across the state. See also infra note 25. We conclude that utilizing the time-tested analytical framework of Sullivan, but with greater latitude, as called for by the plain meaning of the statute, is the more prudent approach in light of our duty to provide meaningful guidance to those who are confronted with such issues in litigation.

21

interpretation of subd. (2)(b)1. contradicts the plain language of para. (2)(a). Paragraph (2)(a) only excepts subd. (2)(b)2.——not subd. (2)(b)1.——from its general prohibition on the use of other acts "to prove the character of a person in order to show that the person acted in conformity therewith." Wis. Stat. § 904.04(2)(a). Where a specific exception is made, it implies that no other exceptions are intended. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-11 (2012) ("The expression of one thing implies the exclusion of others (expressio unius est exclusio alterius)."). Thus, we cannot read subd. (2)(b)1. as an exception to para. (2)(a)'s general prohibition on propensity.

¶30 This results in ambiguity with regard to the meaning of subd. (2)(b)1. See Kalal, 271 Wis. 2d 633, ¶47 ("[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses."). If the plain language of a statute is ambiguous as to meaning, we consider the scope, context, and purpose of the statute. Id., ¶¶48-49. In this regard, the title of subd. (2)(b)1., "Greater latitude," is instructive. As a preliminary matter, we note that "[t]itles . . . are not part of the statutes," Wis. Stat. § 990.001(6), but are "permissible indicators of meaning . . . for the purpose of . . . relieving [] ambiguity," Scalia & Garner, supra ¶29, at 221-22. See also Aiello v. Vill. of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996) ("Although titles are not part of statutes, . . . they may be helpful in interpretation."). As noted above, there is

22

ambiguity with regard to the meaning of subd. (2)(b)1., thus, reference to its title is appropriate here.

¶31  In the context of its title, "Greater latitude," we interpret subd. (2)(b)1. as adopting the common law greater latitude rule to permit the admission of other, similar acts of domestic abuse with greater latitude.  "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."  Wis. Stat. § 990.01(1); see also Scalia & Garner, supra ¶29, at 320 ("A statute that uses a common-law term, without defining it, adopts its common-law meaning.")  Here, "greater latitude" is a technical term defined in the common law that deals with admission of other-acts evidence, thus it "shall be construed according to such meaning."  § 990.01(1).

¶32  Under the common law, the greater latitude rule allows for more liberal admission of other-acts evidence.  See, e.g., State v. Hurley, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174.  It has traditionally been applied in cases of sexual abuse, particularly those involving children.  See, e.g., id.  Its application in this context dates back to 1893, and it has been so-applied in hundreds of cases since.  See Proper v. State, 85 Wis. 615, 630, 55 N.W. 1035 (1893) ("A greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes.").  Thus, the term "greater latitude" is a term of art in the context of other-acts evidence and its application is well-established in the common law.

23

¶33 The greater latitude rule has been described as operating to "facilitate[] the admissibility of the other acts evidence under the exceptions set forth in [Wis. Stat.] § 904.04(2)[(a)]." State v. Hammer, 2000 WI 92, ¶23, 236 Wis. 2d 686, 613 N.W.2d 629 (citing Hendrickson v. State, 61 Wis. 2d 275, 279, 212 N.W.2d 481 (1973)). And indeed, after Sullivan, which set out the standard for admission of other-acts evidence under para. (2)(a), we clarified that the greater latitude rule is to be applied within the Sullivan analysis (which requires a (2)(a) permissible purpose under the first prong). See State v. Davidson, 2000 WI 91, ¶51, 236 Wis. 2d 537, 613 N.W.2d 606. Application of the greater latitude rule, however, is not limited to any one prong. See id. Thus, for the types of cases enumerated under Wis. Stat. § 904.04(2)(b)1., circuit courts should admit evidence of other acts with greater latitude under the Sullivan analysis to facilitate its use for a permissible purpose.[24]

¶34 Before concluding our interpretation of the statute, we note that adopting Dorsey's interpretation would render

---

[24] This conclusion is further supported by the Legislative Reference Bureau analysis that accompanied the assembly bill: "This bill states that, in a prosecution alleging . . . a crime of domestic abuse . . . evidence of similar acts is generally admissible . . . ." Drafting File for 2013 Wis. Act 362, Analysis by the Legislative Reference Bureau of 2013 A.B. 620, Legislative Reference Bureau, Madison, Wis. See Kalal, 271 Wis. 2d 633, ¶51 ("[L]egislative history need not be and is not consulted except to resolve an ambiguity in the statutory language . . . .").

24

subd. (2)(b)1. superfluous. Dorsey argues that a straight _Sullivan_ analysis applies, that is, that circuit courts are not permitted greater latitude to admit evidence of other acts in domestic abuse cases. A straight _Sullivan_ analysis, however, is what circuit courts apply when a party seeks to introduce other-acts evidence under para. (2)(a). _Sullivan_, 216 Wis. 2d at 772-73. Before the statute was amended, this was the proper standard for admission of other acts of domestic abuse, and, in fact, before the amendment, the State did seek to introduce other acts of domestic abuse under para. (2)(a). _See, e.g._, _Sullivan_, 216 Wis. 2d 768. But the addition of subd. (2)(b)1. provided a specific standard for admission of other acts of domestic abuse. Thus, to hold that a straight _Sullivan_ analysis is still the proper standard for admission would render the legislature's enactment of subd. (2)(b)1. meaningless. This we cannot do. _See_ _Kalal_, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."); Scalia & Garner, _supra_ ¶29, at 174-79 ("If possible, every word and every provision is to be given effect (_verba cum effectu sunt accipienda_). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (Footnote omitted.)).

¶35 In sum, we conclude that Wis. Stat. § 904.04(2)(b)1. permits circuit courts to admit evidence of other, similar acts of domestic abuse with greater latitude, as that standard has been defined in the common law, under _Sullivan_, because it is

25

the most reasonable interpretation in light of the context and purpose of the statute. See Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used . . . and reasonably, to avoid absurd or unreasonable results."). As a practical matter, not only does our analysis afford due respect to the words of this legislation, but maintaining the well-established Sullivan analysis, with greater latitude in domestic abuse cases, also provides a framework for litigants and our courts to create a thorough record of the arguments and rulings concerning other-acts evidence.[25]

---

[25] We note that the concurrence does not take issue with applying steps two and three of the Sullivan analysis. Sullivan defines its "three-step analytical framework" in relevant part as follows:

> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § 904.01? . . .
>
> (3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence [under Wis. Stat. § 904.03]?

216 Wis. 2d at 772-73. The concurrence agrees that "subsec. (2)(b)1 . . . permits the admission of 'similar acts' evidence . . . as long as the proffered evidence satisfies Wis. Stat. § 904.01's relevance test and is not excluded under Wis. Stat. § 904.03's unfair prejudice test." Concurrence, ¶62. The § 904.03 balancing test, however, subsumes permissible purpose: the danger of unfair prejudice is exactly the rationale which underlies Wis. Stat. § 904.04's general prohibition of propensity. See supra note 23. Thus, it is not clear how a party could establish relevance under Wis. Stat. § 904.01, or pass the balancing test under § 904.03, without proffering a "purpose" (relevance) that is "permissible" (not substantially

(continued)

26

### B.    Whether Admission Of Dorsey's Other Acts Was An Erroneous Exercise Of Discretion.

¶36 We consider second whether the evidence of Dorsey's other acts was properly admitted under Wis. Stat. § 904.04(2)(b)1.  The arguments of the parties on this issue are outlined in detail below.  In this regard, we note that our review on this issue is limited to the arguments presented to the circuit court at the time the circuit court made its admissibility determination.  Thus, although the parties raised additional arguments on appeal, we limit our analysis to the arguments they raised in the circuit court.  We conclude that the circuit court did not erroneously exercise its discretion in admitting evidence of Dorsey's other acts because the circuit court applied the proper legal standard and admission was a conclusion that a reasonable judge could reach based on the facts of the record.

¶37 Our analysis "begins with the understanding that the circuit court's decisions to admit or exclude evidence are entitled to great deference."  Jackson, 352 Wis. 2d 249, ¶45.  We will uphold a circuit court's evidentiary ruling if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion

outweighed by the danger of unfair prejudice).  See also State v. Hurley, 2015 WI 35, ¶62, 361 Wis. 2d 529, 861 N.W.2d 174 ("Identifying a proper purpose for other-acts evidence is not difficult and is largely meant to develop the framework for the relevancy examination.").

27

that a reasonable judge could reach." Hurley, 361 Wis. 2d 529, ¶28.

¶38 As explained above, the proper standard for admission of other acts of domestic abuse is one of greater latitude. See supra ¶35. Here the record reflects that the circuit court applied this legal standard: at the hearing on the State's motion to introduce other-acts evidence, the circuit court held that the recently amended language "provid[es] greater latitude . . . similar . . . to the serious sex offense business and making it available more to be able to be used in the case in chief than [the court] would provide."

¶39 The circuit court also reached a conclusion that a reasonable judge could reach using a demonstrated, rational process. The lodestar of admissibility of other-acts evidence is the three-prong analysis promulgated in Sullivan: other-acts evidence is admissible if (1) it is offered for a permissible purpose under Wis. Stat. § 904.04(2)(a); (2) it is relevant under Wis. Stat. § 904.01; and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under Wis. Stat. § 904.03. See Sullivan, 216 Wis. 2d at 772-73.

### 1. Whether the other acts were offered for a permissible purpose.

¶40 Under the first prong, the State offered Dorsey's "two Battery convictions and his conduct of June 2011 through November 2011 . . . to establish [his] intent and motive to cause bodily harm to [C.B.] and to control her within the context of a domestic relationship." Dorsey did not

28

meaningfully argue that these were not permissible purposes; rather, he focused on relevancy, which we discuss in detail below.

¶41 The transcript of the motion hearing reflects that the circuit court understood the purposes for which the State offered the evidence. See supra note 13. Thus, the court was within its discretion in holding that intent and motive to control were permissible purposes. See, e.g., State v. Veach, 2002 WI 110, ¶58, 255 Wis. 2d 390, 648 N.W.2d 447.

¶42 Moreover, this was a conclusion that a reasonable judge could reach. Under Wis. Stat. § 904.04(2)(a), "motive" and "intent" are listed as permissible purposes. Thus, the evidence was offered for a permissible purpose. See State v. Payano, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832 (citing Wis. Stat. § 904.04(2) (2007-08)) ("As long as the proponent identifies one acceptable purpose for admission of the evidence that is not related to the forbidden character inference, the first step is satisfied. Consequently, this first step is hardly demanding." (Footnote omitted.) (Citations omitted.)); see also State v. Marinez, 2011 WI 12, ¶29, 331 Wis. 2d 568, 797 N.W.2d 399 (noting that permissible purposes under Sullivan are not limited to those listed in the statute or to those recognized in previous cases).

¶43 Thus, especially given greater latitude in this domestic abuse case, the circuit court did not err in concluding that Dorsey's other acts were offered for a permissible purpose.

## 2. Whether the other acts were relevant to the permissible purposes.

¶44 Under the second prong, the relevance inquiry is two-fold: first, "[t]he evidence must relate to a fact or proposition of consequence"; second, the evidence must have probative value, that is, "a tendency to make a consequential fact more or less probable than it would be without the evidence." Veach, 255 Wis. 2d 390, ¶59; see Wis. Stat. § 904.01.

¶45 With regard to the first, the State argued that intent is of consequence because it is an element of the charged crimes; it argued that motive is of consequence because "[m]otive is always relevant," in part because it is related to intent. With regard to the second, the State argued that the other acts were near in time because, although two years had passed, Dorsey was on probation for a portion of that time. The State further argued that the other acts were similar in circumstance because:

- The arguments that preceded the assaults concerned Dorsey's allegations that his partners did not show him sufficient respect;

- The assaults occurred when the victims were in their home or vehicle;

- In both the November 2011 (R.K.) and March 2014 (C.B.) incidents, the assaults happened in the midst of Dorsey accusing the victims of lying to him; and

• In both the November 2011 (R.K.) and March 2014 (C.B.) incidents, Dorsey restricted his victims' movements.

¶46 With regard to the first, Dorsey argued that intent and motive were not of consequence in this case because he planned to deny that the alleged crimes ever happened, and thus, he was not directly disputing the issue of intent and motive. Dorsey also argued that, to the extent that the other-acts evidence bolstered C.B.'s credibility, admission was improper. With regard to the second, Dorsey argued that, although the charges were similar, the victims were different people, and that "one prior offense doesn't make the allegation of another one more or less probable."

¶47 The circuit court found

that using [] greater latitude . . . [the evidence] does have probative value in that it does go to, because of the similarity, the motive to control. Although it is not very, very, very near in time, it's within two years and in a period of time in which the clock kind of stops ticking a little bit because the defendant is on probation for a period of that time. And while they're similar, they do not involve the same victim, there is some case law that it doesn't need to involve the same victim, but the clear statutory language indicates that it does not need to involve the same victim.

This record reflects that the court applied the proper legal standard to the relevant facts using a demonstrated, rational process.

¶48 Moreover, this was a conclusion that a reasonable judge could reach. Whether other-acts evidence is "of consequence" asks whether it is logically related to an element

31

of the offense, that is, whether, under the substantive law, it is related to "the ultimate facts and links in the chain of inferences that are of consequence to the case." Sullivan, 216 Wis. 2d at 786. Intent and motive are "of consequence." Wis. Stat. § 904.01. Intent is an element of two of the three charged crimes at issue here.[26] "[A]n element of a crime constitutes a consequential fact that the State must prove even if the defendant does not dispute the element." Veach, 255 Wis. 2d 390, ¶¶61, 77 (characterizing and upholding Davidson,

---

[26] The second charge was for Misdemeanor Battery under Wis. Stat. § 940.19(1):

> Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor.

See also Wis JI——Criminal 1220 (2015). The fourth charge was for Aggravated Battery under Wis. Stat. § 940.19(6):

> Whoever intentionally causes bodily harm to another by conduct that creates a substantial risk of great bodily harm is guilty of a Class H felony.

See also Wis JI——Criminal 1226 (2015). The jury was also instructed on intent for each of these charges as follows:

> "Intent to cause bodily harm" means that the defendant had the mental purpose to cause bodily harm to another human being or was aware that his conduct was practically certain to cause bodily harm to another human being. . . .

> You cannot look into a person's mind to find intent and knowledge. Intent and knowledge must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon intent.

32

236 Wis. 2d 537, ¶65); see also Hammer, 236 Wis. 2d 686, ¶25 (citing State v. Plymesser, 172 Wis. 2d 583, 594-95, 493 N.W.2d 376 (1992)) ("If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element."). Similarly, although motive is not specifically an element of a crime that the State must prove, here it is logically related to the element of intent. "Intent" is defined as having a requisite "mental purpose." See, e.g., Wis JI——Criminal 1220 (2015); supra note 26. Motive is relevant to establishing purpose.[27] See, e.g., Davidson, 236 Wis. 2d 537, ¶65 (quoting Plymesser, 172 Wis. 2d at 594-95). "Evidence relevant to motive is therefore admissible, whether or not defendant disputes motive." Id.

¶49 Whether other-acts evidence has probative value asks whether the other acts are similar, that is, whether they are

---

[27] Dorsey argues that his cause is distinguishable from the considerable precedent applying the greater latitude rule and holding that motive is relevant to establish purpose because that precedent exclusively evaluates the relevance of motive in the context of sexual abuse crimes, where the purpose of "sexual gratification" is an element of the crime. See, e.g., State v. Hammer, 2000 WI 92, ¶27, 236 Wis. 2d 686, 613 N.W.2d 629 ("[The] testimony was properly admitted to prove motive because purpose is an element of sexual contact."). If we were considering a pure question of common law, extension of the greater latitude rule might not be a perfect analogy for domestic abuse cases but we are not; instead, we are considering the legislature's statutory extension of the common law greater latitude rule to domestic abuse contexts. Thus, Dorsey's argument that evidence of motive should not be admitted under our greater latitude cases fails.

near "in time, place, and circumstance[,] to the alleged crime or to the fact or proposition sought to be proved." Sullivan, 216 Wis. 2d at 786 (citing Whitty v. State, 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967)).[28] Here, the other acts tend to make the facts of intent and motive more probable because they are similar as to intent and motive, namely that, in both instances, Dorsey became violent when he felt like he was being disrespected or lied to, and he isolated his victims and restricted their movements immediately prior to the assaults. See supra ¶45.

¶50 Furthermore, to the extent that R.K.'s testimony operated to bolster C.B.'s credibility, we have held that "[a] witness's credibility is always 'consequential' within the meaning of Wis. Stat. § 904.01." Marinez, 331 Wis. 2d 568, ¶34. And we have held that credibility is particularly probative in cases that come down to he-said-she-said. Id. Moreover, the difficult proof issues in these kinds of cases "provide the rationale behind the greater latitude rule. . . . [I]t follows that the greater latitude rule allows for the more liberal admission of other-acts evidence that has a tendency to assist the jury in assessing [credibility]." Id. (citation omitted).

¶51 Thus, especially given greater latitude in this domestic abuse case, the circuit court did not err in concluding

---

[28] As noted above, see supra note 22, subd. (2)(b)1. explicitly requires that the other acts be similar. This requirement is satisfied by the similarity analysis under this second prong of Sullivan.

34

that Dorsey's other acts were relevant to the purposes of intent and motive.

### 3. Whether the probative value was substantially outweighed by the risk of unfair prejudice.

¶52 Under the third prong, the State noted that it was Dorsey's burden to show that the probative value was substantially outweighed by the danger of unfair prejudice and argued that he would not be able to do so: the probative value of Dorsey's other acts "could not be substantially outweighed by the danger of unfair prejudice" because of the similarities of the incidents.  The State also argued that "a cautionary instruction [would] ensure that the jury uses the evidence [] only to evaluate the defendant's motive [and] intent."  Dorsey argued that the other acts would unfairly bolster the credibility of C.B. because "when you have a female who's alleging abuse in a domestic type situation, the jury is automatically . . . already more toward the female who's making the allegations."  Dorsey also argued that admitting R.K.'s testimony would result in a trial within a trial, confusing the issues the jury must decide.

¶53 The circuit court found

that using [] greater latitude . . . is the probative value substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, needless presentation of cumulative evidence, and then the court's consideration of delay and waste of time, I do not find that it is.  That with a cautionary instruction, it can be provided that this information goes only to evaluate the defendant's motive and intent elements.  There's going to be no claim of

35

> mistake or what have you. So for those reasons, I'll allow it in.

This record reflects that the court applied the proper legal standard to the relevant facts using a demonstrated, rational process.

¶54 Moreover, this was a conclusion that a reasonable judge could reach. "Because the statute provides for exclusion only if the evidence's probative value is substantially outweighed by the danger of unfair prejudice, [t]he bias is [] squarely on the side of admissibility." Marinez, 331 Wis. 2d 568, ¶41 (first alteration in original). "The evidence's probative value largely turns on the relevancy analysis from step two under Sullivan." Payano, 320 Wis. 2d 348, ¶81. "If the probative value is close to or equal to its unfair prejudicial effect, the evidence must be admitted." Hurley, 361 Wis. 2d 529, ¶87. And "[t]o limit the possibility that the jury will convict based on 'improper means[,]' circuit courts may . . . edit the evidence." Id., ¶89.

¶55 As noted above, the circuit court found that the prior acts and the charged acts were near in time and similar in place and circumstance. Additionally, the circuit court limited any unfair prejudice by precluding admission of the fact of Dorsey's

convictions for the other acts[29] and by planning to give a cautionary instruction at the close of evidence. We presume that jurors follow the instructions given by the court. See, e.g., Marinez, 331 Wis. 2d 568, ¶41. Where a cautionary instruction is not tailored to the facts of the case, "its cautionary effect [may be] significantly diminished." Sullivan, 216 Wis. 2d 791; cf. id. (quoting State v. Mink, 146 Wis. 2d 1, 17, 429 N.W.2d 99 (Ct. App. 1988)) ("[A] cautionary instruction, even if not tailored to the case, can go 'far to cure any adverse effect attendant with the admission of the [other-acts] evidence.'"). Here, the cautionary instruction was tailored to the facts particular to this case——intent and motive——and was therefore in its most effective form. See supra ¶19.

¶56 Thus, especially given greater latitude in this domestic abuse case, the circuit court did not err in concluding that the probative value of Dorsey's other similar acts was not substantially outweighed by the risk of unfair prejudice.

¶57 In sum, we conclude that the circuit court's admission of the other-acts evidence under Wis. Stat. § 904.04(2)(b)1. was not an erroneous exercise of discretion because the circuit court properly applied greater latitude under a Sullivan

---

[29] The circuit court did not decide the admissibility of the fact of Dorsey's convictions for his other acts toward R.K. at the motion hearing on December 22, 2014; rather, it reserved decision on whether the convictions were relevant for when R.K. was testifying. Ultimately, the circuit court did not allow in the fact of Dorsey's convictions.

37

analysis, considered the relevant facts using a demonstrated, rational process, and reached a conclusion that a reasonable judge could reach.

## IV. CONCLUSION

¶58 There are two issues on this appeal. First, we consider what standard for admission of other-acts evidence applies under the recently amended language in Wis. Stat. § 904.04(2)(b)1. Second, we consider whether the evidence of Dorsey's other acts was properly admitted under § 904.04(2)(b)1. As to the first issue, we conclude that the recently amended language allows admission of other-acts evidence with greater latitude under a Sullivan analysis. As to the second issue, we conclude that the circuit court did not erroneously exercise its discretion in admitting evidence of Dorsey's other acts because the circuit court applied the proper legal standard and admission was a conclusion that a reasonable judge could reach based on the facts of the record.

¶59 Thus, we affirm the decision of the court of appeals on other grounds.

*By the Court*.—The decision of the court of appeals is affirmed.

¶60 SHIRLEY S. ABRAHAMSON, J., did not participate.

¶61 REBECCA GRASSL BRADLEY, J.   *(concurring).*  Instead of adopting a plain meaning interpretation of Wis. Stat. § 904.04(2)(b)1, the majority chose to squeeze the new language of subsec. (2)(b)1 back into the Sullivan[1] analysis under subsec. (2)(a) and declares that its only substantive effect arises from its statutory title by affording greater latitude in domestic abuse cases when admitting other-acts evidence.  By doing so, the majority renders the actual text of subsec. (2)(b)1 meaningless.  Under the majority's holding, admission of similar acts evidence at specifically enumerated sensitive crimes trials remains bound by the same three-step Sullivan analysis used before the legislature added subsec. (2)(b)1 to the statute.  I disagree with the majority's interpretation.

¶62 I write separately to apply a plain meaning interpretation to Wis. Stat. § 904.04(2)(b)1.  A plain meaning analysis establishes that Sullivan does not apply to subsec. (2)(b)1; rather, subsec. (2)(b)1 operates independently from subsec. (2)(a) and permits the admission of "similar acts" evidence at the enumerated sensitive crimes trials, as long as the proffered evidence satisfies Wis. Stat. § 904.01's relevance test and is not excluded under Wis. Stat. § 904.03's unfair prejudice test.  Applying this interpretation to the challenged evidence in Dorsey's case, I conclude the circuit court did not erroneously exercise its discretion in admitting the evidence;

---

[1] See State v. Sullivan, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1988).

1

therefore, I would affirm the decision of the court of appeals. I respectfully concur.

I

¶63 This case presents the court with the first opportunity to interpret the newly revised Wis. Stat. § 904.04(2), which added an entirely new subsection titled "Greater latitude." Wisconsin Stat. § 904.04(2) reads:

(2) <u>OTHER CRIMES, WRONGS, OR ACTS</u>.

(a) <u>General admissibility</u>. Except as provided in par. (b)2., evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(b) <u>Greater latitude</u>.

1. In a criminal proceeding alleging a violation of s. 940.302(2) or of ch. 948, alleging the commission of a serious sex offense, as defined in s. 939.615(1)(b), or of domestic abuse, as defined in s. 968.075(1)(a), or alleging an offense that, following a conviction, is subject to the surcharge in s. 973.055, evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

2. In a criminal proceeding alleging a violation of s. 940.225(1) or 948.02(1), sub. (1) and par. (a) do not prohibit admitting evidence that a person was convicted of a violation of s. 940.225(1) or 948.02(1) or a comparable offense in another jurisdiction, that is similar to the alleged violation, as evidence of the person's character in order to show that the person acted in conformity therewith.

2

¶64 The majority correctly sets forth the court's standard for reviewing statutes. Majority op., ¶¶27-28. It goes astray, however, when it concludes that interpreting para. (b)1 in context means it is subject to the language of para. (a). Majority op., ¶29. In a plain meaning analysis, the court examines the language in the statute and if "the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The language used in para. (b)1 is plain and its meaning should be applied as written.

¶65 The language of para. (b)1 plainly instructs: (1) in certain specified sensitive crime proceedings; (2) "evidence of any similar acts by the accused is admissible"; (3) even when the victim of the similar act is different than the victim in the case being prosecuted. Wis. Stat. § 904.04(2)(b)1. Nothing in this paragraph requires that the "similar acts" be admitted for a particular purpose, and nothing says the similar acts cannot be admitted to prove a person acted in conformity therewith.

¶66 This language arguably conflicts with para. (a), which directly precedes para. (b)1, but only if one assumes the legislature cannot create an exemption from para. (a) unless it places the text of that exemption in para. (a) and nowhere else. Paragraph (a) prohibits the admission of "evidence of other crimes, wrongs or acts" to prove propensity, with two exceptions. Such "other acts" evidence is admissible in criminal prosecutions alleging the crimes set forth in para.

3

(b)2 and such evidence is admissible for a purpose other than propensity in any proceedings. By contrast, para. (a) does not explicitly except para. (b)1 from its provisions. The pivotal question then is whether para. (a)'s prohibition against propensity evidence and its requirement of a permissible purpose apply to para. (b)1. I conclude they do not.

¶67 "It is a cardinal rule of statutory construction that when a general and a specific statute relate to the same subject matter, the specific statute controls and this is especially true when the specific statute is enacted after the enactment of the general statute." Martineau v. State Conservation Comm'n, 46 Wis. 2d 443, 449, 175 N.W.2d 206 (1970) (citing Raisanen v. City of Milwaukee, 35 Wis. 2d 504, 516, 151 N.W.2d 129 (1967)); City of Wauwatosa v. Grunewald, 18 Wis. 2d 83, 87, 118 N.W.2d 128 (1962); Pruitt v. State, 16 Wis. 2d 169, 173-74, 114 N.W.2d 148 (1962); Maier v. Racine Cty., 1 Wis. 2d 384, 388, 84 N.W.2d 76 (1957); see also State v. Wilson, 2017 WI 63, ¶35, 376 Wis. 2d 92, 896 N.W.2d 682 ("[W]here a specific statutory provision leads in one direction and a general statutory provision in another, the specific statutory provision controls." (quoted source omitted)); State v. Schaefer, 2008 WI 25, ¶47, 308 Wis. 2d 279, 746 N.W.2d 457.[2] Here, paras. (a) and

---

[2] The majority does not apply the well-established "specific statute controls over a general statute" rule, which has been repeatedly adopted by this court in prior statutory construction cases. See, e.g., Belding v. Demoulin, 2014 WI 8, ¶17, 352 Wis. 2d 359, 842 N.W.2d 373; Emjay Inv. Co. v. Vill. Of Germantown, 2011 WI 31, ¶38, 333 Wis. 2d 252, 797 N.W.2d 844; Kramer v. City of Hayward, 57 Wis. 2d 302, 311, 203 N.W.2d 872 (1973). Instead, the majority applies the "expressio unius est
(continued)

4

(b)1 both relate to the admission of evidence. Paragraph (a) broadly covers any civil or criminal action, applies to the defendant as well as any witness who testifies, and addresses "crimes, wrongs, or acts." Paragraph (b) specifically covers only particular sensitive crimes, applies only to "similar acts," and is limited to evidence against the defendant. There can be no dispute that para. (b)1 is the more specific statute. Thus, the admission of the challenged evidence should be analyzed only under para. (b)1.

¶68 The majority says the statute is ambiguous because the plain language of para. (a) conflicts with para. (b)1. It then concludes that para. (b)1's only meaning is to give greater latitude to the admission of other-acts evidence in domestic violence cases. The majority gives two reasons for its conclusion: (1) the explicit exception referenced in para. (a) means para. (b)1 cannot operate as an exception; and (2) the title "Greater latitude" resolves the ambiguity and gives meaning to (b)1. Majority op., ¶¶29-33.

---

exclusion alterius" canon ("The expression of one thing implies the exclusion of others.") by citing exclusively to Reading Law: The Interpretation of Legal Texts. Majority op., ¶29 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-11 (2012)). However, Reading Law also instructs, consistent with well-established Wisconsin law, that "[i]f there is a conflict between a general provision and a specific provision, the specific provision prevails." Scalia & Garner, supra, at 183. Particularly pertinent to reconciling Wis. Stat. § 904.04(2)(a) with § 904.04(2)(b)(1), "[u]nder this [general/specific] canon, the specific provision is treated as an exception to the general rule." Id.

5

¶69 The majority's interpretation, however, results in the newly enacted para. (b)1 being swallowed by para. (a). Before the enactment of para. (b)1, all "other acts" evidence in the specifically enumerated crimes in para. (b)1 was subject to already-existing para. (a). In other words, in a domestic violence case like this one, if the State wanted to introduce evidence of Dorsey's prior similar bad acts toward R.K., it would need to clear the three-part Sullivan analysis. The majority holds that despite the legislature's revision to Wis. Stat. § 904.04(2), admission of other-acts evidence in sensitive crimes cases remains subject to a Sullivan analysis.

¶70 The majority holds Sullivan still controls the admission of evidence under the newly-enacted para. (b)1. It determines the only effect of this statutory paragraph was to give greater latitude when admitting other-acts evidence in domestic abuse cases. Under this construction, all of the other statutory language of para. (b)1 is rendered superfluous. The legislature might as well have limited para. (b)1 to say "courts shall give greater latitude under the Sullivan test in domestic violence cases." After all, the greater latitude rule already applied to sexual assault crimes before the enactment of para. (b)1. See State v. Davidson, 2000 WI 91, ¶44, 236 Wis. 2d 537, 613 N.W.2d 606. The majority's interpretation violates the fundamental rule of statutory construction requiring courts to give effect to all statutory provisions "so that no part will be inoperative or superfluous." See Kalal, 271 Wis. 2d 633, ¶46; see also Clark v. Rameker, 134 S. Ct.

6

2242, 2248 (2014) (quoted source omitted). Statutes should be "read where possible to give reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46.

¶71 This can be done quite simply in this case by adopting a plain meaning interpretation. Under that interpretation, admission of other-acts evidence in cases not specifically enumerated in para. (b)1 will continue to be governed by the Sullivan three-part analysis. Those cases are confined to the limitations set out in the language of para. (a) and evidence is inadmissible unless a party proffers a permissible purpose (and clears the second and third part of the Sullivan analysis). In the specifically identified criminal actions prosecuting sensitive crimes under para. (b)1, the admission of evidence will not require a particular purpose to secure admission. Rather, it will be admitted if it constitutes a "similar act." Its admission, like all proffered evidence, is subject to Wis. Stat. § 904.01's relevancy requirement and may be excluded even if relevant under Wis. Stat. § 904.03's unfair prejudice test. See Davidson, 236 Wis. 2d 537, ¶34 (noting that to be admitted, all evidence "must be relevant under" Wis. Stat. § 904.01 and

7

must clear Wis. Stat. § 904.03's unfairly prejudicial balancing test.).[3]

¶72 I am not persuaded by the majority's position that because para. (a) specifically excepts para. (b)2, this means that para. (b)1 cannot operate independently from para. (a). Paragraph (b)1's own language operates to except it from para. (a) and this is the only interpretation of the statute that gives effect to every provision. And under the general/specific canon, the specific provision——here, para. (b)1——is treated as an exception to the general rule, embodied here in para. (a). Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012).

¶73 I am also not persuaded that the only meaning given to para. (b)1 arises from its title——"Greater latitude." The title

---

[3] The majority says it does not know how the plain meaning of this statute would work in conjunction with the "relevance" and "unfair prejudice" tests: "[I]t is not clear how a party could establish relevance under Wis. Stat. § 904.01, or pass the balancing test under § 904.03, without proffering a 'purpose' (relevance) that is 'permissible' (not substantially outweighed by the danger of unfair prejudice)." Majority op., ¶35 n.25. The permissible purpose, of course, is to establish that the defendant acted in conformity with the character established by the "similar acts" evidence. That is the same permissible purpose the legislature authorized in subsec. (2)(b)2 (evidence of conviction on comparable offenses admissible as "evidence of the person's character in order to show that the person acted in conformity therewith."). There is nothing the majority can say on this score with respect to subsec. (2)(b)1 that would not apply with equal force to subsec. (2)(b)2. The majority is obviously uncomfortable with this policy change, but our role is not to judge the wisdom of a legislative choice. It is only to apply it insofar as it is consistent with the Wisconsin and United States Constitutions.

of the statute is not part of the statute. See Wis. Stat. § 990.001(6) ("titles to subchapters, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."). Although titles may be helpful in interpreting a statute, the "text must control over title." Aiello v. Vill. of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996). "[A] title or heading should never be allowed to override the plain words of a text." Scalia & Garner, supra ¶12, at 222. Here, the text of the statute itself expresses the meaning of para. (b)1, and it is the text itself, rather than its title, that makes evidence of "similar acts" in sensitive crimes cases admissible without requiring the State to establish a permissible purpose. "[The] heading is but a shorthand reference to the general subject matter involved." Scalia & Garner, supra ¶12, at 221 (quoting Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 529-29 (1947)). Here, the title "Greater latitude" is an apt description of the text that follows, because in certain criminal proceedings, evidence that would otherwise be inadmissible without clearing the Sullivan hurdles is made admissible, period. However, the majority misapplies the title to read into subsec. (2)(b)1 evidentiary preconditions wholly absent from the text.

¶74 The majority says we must ignore the plain meaning of subsec. (2)(b)1 because it "creates a conflict . . . in the context of subsec. (1), which embodies the general purpose of rule 904.04 'to exclude use of other misdeeds to prove character in order to prove guilt.'" Majority op., ¶28 n.23. In one

9

sense, this arguably creates a "conflict" because the scope of Wis. Stat. § 904.04(1) after adoption of subsec. (2)(b)1 is not as great as before. But when the legislature adopts a new provision that is inconsistent with an existing provision, we don't call it a "conflict," we call it an amendment. Yes, adoption of subsec. (2)(b)1 limited the general purpose of proscribing the use of "other acts" evidence to prove propensity. But on what authority does the majority reject this valid legislative choice?

¶75 The majority objects to the legislature's change because it "would effectively repeal the exclusionary purpose of the rule, which is supported by four long-standing and oft-cited rationales . . . ." Majority op., ¶28 n.23.[4] It is true that the rationales are long-standing and oft-cited. But so what? Do we really propose a pitched battle between our rationales and the legislature regarding a subject on which it has the authority to legislate? Even if our rationales had enjoyed universal acclamation from the beginning of time, still they would have no standing against the legislature's decision to change this policy. This discussion suggests the court rejected the plain meaning of subsec. (2)(b)1 simply because it altered the status quo ante that had obtained in Wis. Stat. § 904.04(1).

---

[4] This significantly overstates the reach of subsec. (2)(b)1, which is limited to the identified types of cases. But within those types of cases, the majority is correct that it would repeal the exclusionary purpose of the general rule. But this repeal is accomplished by the legislature's pen, not ours, and it is the legislature's prerogative to do so.

10

¶76 The majority replaces the legislature's policy choices with what it characterizes as its own "more prudent approach." Majority op., ¶28 n.23. This method of interpretation, sometimes termed consequentialism, rejects the statutory text in favor of a construction that will "produce sensible, desirable results, since that is surely what the legislature must have intended. But it is precisely because people differ over what is sensible and what is desirable that we elect those who will write our laws——and expect courts to observe what has been written." Scalia & Garner, supra ¶12, at 22. Our "duty to provide meaningful guidance[,]" see majority op., ¶28 n.23, to the bench and bar cannot override our duty to say what the law is and not what we may wish it to be. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).

¶77 The majority also shies away from the plain meaning of subsec. (2)(b)1 because it does not contain a comprehensive set of interpretive aids to help the bench, bar, and juries understand the meaning of "similar acts." Majority op., ¶28 n.23. It worries this "would result in appeal after appeal, and would require opinion after opinion" to determine the proper application of this provision. That may be true. But that's also the reason we are here. And "similar acts" is not so ethereal or exotic that we should struggle with it more than, say, the meaning of "comparable offenses" (subsec. (2)(b)2) that are "similar to the alleged violation," id., or "pertinent trait" (subsec. (1)(a) & (b)), or the purposes for which "other acts" evidence may be admitted under subsec. (2)(a).

11

Ultimately, this objection is a category error——the judiciary may not refuse a statutory enactment because it will require too much future interpretative work.

¶78 Applying the plain meaning of the text to the challenged evidence here, I conclude the trial court did not erroneously exercise its discretion in allowing its admission. For these reasons, I respectfully concur.

¶79 I am authorized to state that Justice DANIEL KELLY joins this concurrence.